## SHEPARD CARY versus JEREMIAH WHITNEY.

Although a deed of land from the State is not conclusive against a title from another source clearly traced and legally established, yet it cannot be overthrown by the production of a quitclaim deed of an earlier date from a third party, without evidence of title in the latter.

When the State Legislature has, by resolve, authorized the conveyance of a certain tract of land to a person, he having, it may be presumed, solicited the grant, and having afterwards acted under it, he and those claiming under him are estopped from denying the title of the State.

The power of corporations to pass title to land by vote is anomalous, and limited to the single case of proprietors of common land, and as to them rests entirely upon statute grant, *it seems*.

The State may grant a title to land by a resolve directly, but, in order to do so, there must be in the resolve words of grant, release or confirmation. But where the resolve does not contain any words of grant, but simply authorizes or provides for the giving of a deed, the title does not pass until the deed is executed.

Where a resolve provided for a grant of land to a person who had erected a saw mill, the State, after the passage of the resolve, and before the conveyance by the Land Agent, did not hold the land as trustee for its intended beneficiary. It was a donation, and not a case of a vendor who had received the purchase money under an agreement to sell and convey.

Where a resolve authorized the Land Agent to convey certain lands to A or his assigns, and accordingly he gave a deed thereof to B as the assignee of A, a third party, showing no connection with the title from the Land Agent, cannot object to the title of B, because the fact of assignment, or the legal right of B to take the deed as assignee, has not been proved.

The recital in the deed of the Land Agent, that B is the assignee of A, is *prima facie* sufficient evidence of the fact.

And where a resolve authorized the Land Agent to convey a certain lot to A or his assigns, the determination of the Land Agent that a certain person is the assignee of A, and entitled to the conveyance as such, is binding and conclusive upon other parties claiming under a prior deed of the same land from A himself.

In such a case, the question whether the assignee took the title charged with a trust for the benefit of A, or of A's grantee, is properly for a Court of Equity ; and such trust, if any existed, cannot be interposed to prevent the holder of the title from the State recovering his legal estate in a suit at law.

But a deed of quitclaim or release from A, prior to the Land Agent's deed to B, does not create any such trust, either expressly or by implication of law.

Cary *v.* Whitney.

Possession of lands, the title of which is in the State, even if adverse and exclusive in its nature, does not operate to disseize or limit the State; nor can a title be acquired by such adverse possession.

But the possession may be such, in its nature and duration, as to entitle the tenant to betterments.

WRIT OF ENTRY. On report of the evidence by CUTTING, J. The demandant claimed two acres of land, being a described part of the lot No. 3., letter F, range 2, west from the east line of the State, now called Presque Isle. Plea the general issue, with brief statement and claim for betterments.

The demandant introduced a deed from E. L. Hamlin, Land Agent, to Dennis Fairbanks, jr., assignee of Dennis Fairbanks, of lot No. 3, dated October 22, 1841, and recorded January 21, 1842; deed from Dennis D. D. Fairbanks to T. J. Hobart, Dec. 20, 1845; T. J. Hobart to Shepard Cary and Collins Whitaker, Sept. 27, 1847; C. Whitaker and wife to Shepard Cary, May 11, 1852.

It was admitted that the demanded premises were part of lot No. 3.

It was in evidence that Dennis D. D. Fairbanks was the same person as Dennis Fairbanks, jr., and that, attached to the record, in the office of the Land Agent, of his deed to D. Fairbanks, jr., was a paper purporting to be a letter from Dennis Fairbanks, authorizing and directing the Land Agent to convey lot No. 3, to Dennis Fairbanks, jr. There was some evidence tending to show that the letter was in the handwriting of Dennis Fairbanks, but the original was not produced.

The tenant introduced a resolve of the Legislature, authorizing the Land Agent to convey to Dennis Fairbanks, or his assigns, lot No. 3, township F, range 2, west from the east line of the State, on which he had erected a saw and grist mill, &c., approved March 18, 1840; deed of the demanded premises, Dennis Fairbanks to Mary Reed, dated June 19, 1840, and recorded July 3, 1840; Mary Reed to C. H. Shepard, March 7, 1843; C. H. Shepard to F. S. Whitney, August 16, 1847; F. S. Whitney to S. Whitney, June 12, 1854; S. Whitney to the tenant, May 11, 1857.

It was proved, amongst other things, that Dennis Fairbanks commenced a clearing upon lot No. 3, in 1828 or 1829, which he enlarged from year to year, until he conveyed the two acres to Mrs. Reed; that she and her husband built a house on the two acres about 1840, which still stands there; that a store and large stable were afterwards built on the same lot, and that, subsequently, the tenant erected another house, costing $5000 or 6000; that the demandant and his partner Whitaker knew of the occupation of the demanded premises by the tenant and his grantors from 1840, until the date of the writ in the action.

There was evidence tending to show that Fairbanks, senior, controlled lot No. 3, after the conveyance to his son as well as before; that the sale by the son to Hobart, was for only $600, and that was never paid, while the property was of much more value.

It was agreed that Washington Long and B. L. Staples should assess the value of the improvements made by the tenant, and those under whom he claimed, and, in case of disagreement, that they should select a third person.

The evidence was reported to the full Court, they to draw such inferences as a jury might, and to enter such judgment as the law, and the testimony legally admissible, might require.

*Blake & Garnsey,* for the demandant.

The deed from Fairbanks, senior, to Mary Reed, was a quitclaim, and passed nothing, the grantor having then no title. Any title he acquired afterwards would not enure to her benefit. *Pike* v. *Galvin,* 29 Maine, 183. So, that if the deed to the son, was in trust, it would not avail. But, if there was a trust, there is no evidence that the son's grantees had any notice of it. The demandant was an innocent *bona fide* purchaser, and no trust or prior fraud could affect him. Greenl. Cruise, tit. 12, "Trust," § 88; Fonblanque's Eq., c. 6, § 2, p. 442, and notes. And notice, even, of a conveyance that passed nothing, would be of no consequence. *Helm* v. *Logan,* 4 Bibb, 78.

The resolve of March 18, 1840, did not give a title *per se.*
It did not purport to grant or convey, but only to authorize
the Land Agent to convey. The authority was to convey to
Fairbanks "or his assigns." If the resolve gave the title of
itself, to which did it give it, to Fairbanks or his assigns?
Nor did Mrs. Reed, by her quitclaim deed, become the as-
signee of Fairbanks. That deed was of two acres, and the
lot contained 168. The son only was the assignee in writ-
ing of the whole. Mrs. Reed's deed conveyed at most any
improvements that had been made on the two acres, not the
title. *Lombard* v. *Ruggles*, 9 Greenl., 62. The record of
Mrs. Reed's deed was no notice to the Land Agent. Records
are not intended to impair the powers of *grantors*, but to
give notice to, and to protect *grantees.* The records of the
Land office showed that the State had not parted with its
title in lot No. 3; the Land Agent was not to go to Aroos-
took county to ascertain who owned it. Nor was the record
of Mrs. Reed's deed legal notice to the son. The title being
in the State, came direct to him, and never was in his father
at all. Notice is not brought home to him by evidence *in
pais* or by record. *Bates* v. *Norcross*, 14 Pick., 224.

But suppose the son had notice, how does that affect Cary?
He had no notice *in pais;* had he any by registry? He
took his deed from Hobart. He finds by the record that
Hobart had conveyed to no one else; that Fairbanks, the son,
had conveyed to no one before his deed to Hobart; and that
the State had conveyed to no one before the deed to the
son. He thus traces the title direct from the fountain to
himself. Conveyances between other parties, having no title
to the premises, could not operate as a registry notice to
Cary. Fairbanks, senior, had no title, and any other person
might as well have deeded to Mrs. Reed as he. *Roberts* v.
*Bourne*, 23 Maine, 165; *Veazie* v. *Parker*, 23 Maine, 170;
*Pierce* v. *Taylor*, 23 Maine, 246; *Bates* v. *Norcross*, before
cited.

Fairbanks, senior, did not acquire title by adverse pos-
session, as twenty years have not elapsed since the State

conveyed to his son; and he did not occupy the premises adversely to the State prior to that conveyance. Angell on Limitations, c. 5, and cases cited.

*Granger, Bradbury & Madigan,* for the tenant.

1. The case finds that Fairbanks, senior, commenced a clearing on the demanded premises in 1828 or 1829, and he and his grantees have occupied ever since. This shows an open, notorious, exclusive, adverse and peaceable possession of more than thirty years. Of this possession the demandant had full knowledge from 1840, down to the time of his taking a deed; nor did he afterwards set up a claim of title to the premises, until this action was brought.

2. It is assumed by the demandant that, at the time of the deed of Fairbanks, senior, to Mrs. Reed, the title to the land was in the State. But how does this appear? The State is not the only source of title. Individuals own much of the land, under various royal or colonial grants, deeds from Massachusetts, and from ancient owners. No principle of law gives the preference to a *junior* title from the State over an *elder* title from another source. The deed of the State, in a judicial tribunal, is to be governed by the same rules of evidence as other deeds. *Crooker* v. *Pendleton,* 23 Maine, 339; *Doe* v. *Prosser,* Cowper, 217; *Hull* v. *Horner,* Cowper, 102; *Clapp* v. *Brenaghan,* 9 Cowen, 530; *Jackson* v. *McCall,* 10 Johns., 377; 2 Wend., 14; 1 Greenl. Ev., 53, § 46, note.

3. The resolve of March 18, 1840, passed the legal estate in No. 3 to Fairbanks, senior. *Mayo* v. *Libby,* 12 Mass., 339; *Pike* v. *Dyke,* 2 Maine, 213; *Dolloff* v. *Hardy,* 26 Maine, 545; *Adams* v. *Frothingham,* 3 Mass., 352; *Springfield* v. *Miller,* 12 Mass., 414; *Codman* v. *Winslow,* 10 Mass., 146; *Folger* v. *Mitchell,* 3 Pick., 396; *Thorndike* v. *Barrett,* 3 Maine, 380.

4. But, if the resolve did not pass the title, the State, after its date, held the land in trust for Fairbanks, senior. In a contract for the purchase of real estate, the vendor, on receiving the purchase money, becomes the trustee of the vendee

until conveyance is made. 1 Cruise's Dig., 370; *Bragg* v. *Paulk*, 42 Maine, 502. And a conveyance by the *cestui que trust* binds the trustee. 3 Kent, 2d ed., 303; 3 Vesey's R., Sumner's ed., 127, 341.

The term "assigns," in the resolve, included any person to whom Fairbanks, senior, should, in any legal mode, transfer his equitable interest in the land or any part of it. 1 Bouv. Law Dict., "Assigns." By his deed to Mary Reed, she became the assignee of the two acres. That deed was recorded July 3, 1840, and Fairbanks, junior, had record notice of it before his deed from the Land Agent.

Dennis Fairbanks, jr., was not the assignee of his father; nothing short of a deed would make him so. Jacob's Law Dict., "Assignee;" *Vose* v. *Handy*, 2 Maine, 322; R. S., c. 73. Assignees must be either by deed or operation of law, as executors, &c. The Land Agent had, therefore, no authority to convey to Fairbanks, junior.

The resolve, as well as a statute then in force, required the conveyance by the Land Agent to be "conditioned for the performance of settling duties." Yet the conveyance was unconditional. Could the Land Agent give a valid deed, not conforming to the statute? All acts of agents, public as well as private, exceeding their authority, are void. *Argyle* v. *Dwinel*, 29 Maine, 29; Story on Agency, 157, ed., 1839; *Cushing* v. *Longfellow*, 26 Maine, 306.

The letter purporting to be from Dennis Fairbanks to the Land Agent, requesting him to convey to his son, is not produced, and there is no competent evidence of its genuineness.

Fairbanks, senior, having assigned his interest in the two acres to Mary Reed, could not authorize the Land Agent to convey to another person. She was his assignee of the two acres, and, as such, entitled to a deed from the State. In equity, the *cestui que trust* is seized of the freehold. 4 Kent, 303, 2d ed.

5. But, if the deed from the State passed all of its interest in the land, what interest did it convey? After the resolve was passed, the State held the land in trust for Fairbanks and

his assigns. Fairbanks, junior, took the conveyance burdened with that trust. The trust fastens itself on the land, and remains, unless the trustee in actual possession conveys to a third party without notice, for a valuable consideration. 1 Greenl. Cruise, 386, 434; *Bragg* v. *Paulk*, 42 Maine, 502. The notice need only be such as is necessary to put a party on inquiry. R. S., c. 73, § 12; *Evans* v. *Chisam*, 18 Maine, 220.

Fairbanks, junior, was not a purchaser for a valuable consideration, and knew that the State was *not* in possession of the two acres, and that Mrs. Reed *was.* He therefore took the conveyance of the two acres in trust for Mrs. Reed. He so regarded it, and never disturbed her.

His deed to Hobart was fraudulent. The property conveyed was worth more than $10,000, and yet he sold it for $600, and even that was never paid.

Besides the house, store and other buildings on the two acres occupied by Mary Reed, there were, upon lot No. 3, the only saw and grist mill in that section, a farm where 70 tons of hay had been cut, the house built by the elder Fairbanks, costing over $3000, and land which soon after sold for $100 and $200 an acre.

All these facts were known to Cary and Whitaker when they purchased lot No. 3. Hobart conveyed to them only his "right, title and interest." Such a deed conveys the actual, not the apparent interest of the grantor. The grantee does not take the estate purged of a fraud in a prior conveyance. *Walker* v. *Lincoln*, 45 Maine, 67; *Coe* v. *persons unknown*, 43 Maine, 432, and cases cited.

If Hobart had any title, it was only a naked legal estate *in trust* for Mrs. Reed, her heirs and assigns. The demandant succeeds to this trust. A trustee cannot maintain a writ of entry against his *cestui que trust.*

A grant or deed may be presumed from lapse of time against the State as well as against an individual. *Crooker* v. *Pendleton*, 23 Maine, 339. No particular length of time is required; it may be all the way from 350 down to 15 years.

No other evidence, except lapse of time, is necessary to raise the presumption. Between 19 and 20 years have elapsed since Mary Reed went into possession under a recorded deed from one who had been in possession 11 years prior to that time. See *Melvin* v. *Prop. Locks and Canal,* 17 Pick., 255; same parties, 16 Pick., 137; *Ricard* v. *Williams,* 7 Wheat., 109; 3 Stark. Ev., 1215, 1228; 2 Black. Com., 198.

The demandant shows no equitable claim; but the equity is all with the tenant.

*Blake & Garnsey,* in reply.

1. The State has exercised acts of ownership within twenty years, surveying lots, deeding land, &c. By his recognition of the resolve, Dennis Fairbanks acknowledged that his possession was not adverse to the title of the State. Angell on Lim., c. 5; *Sparhawk* v. *Ballard,* 1 Met., 95; *Wilbur* v. *Tobey,* 16 Pick., 177. He is estopped to deny the seizin of his own grantor. *White* v. *Patten,* 24 Pick., 324; *Hamlen* v. *Bank,* 19 Maine, 66; 1 Greenl. Ev., §§ 23, 24, note.

2. Under the resolve, as worded, the fee continued in the State until delivery of the Land Agent's deed. *Lambert* v. *Carr,* 9 Mass., 185; *French* v. *Harlow,* id., 192; *Mayo* v. *Libbey,* 12 Mass., 341.

3. The deed of the Land Agent to Fairbanks, jr., passed the title to him. The agent was a public officer empowered to make a certain conveyance, and he made it. The presumption is, that he conveyed the right land to the right person, until the contrary is shown.

Nor was it the duty of the Land Agent to look up Fairbanks' assigns. If Mrs. Reed was assignee of a part of the grant to him, it was her duty to apply to the Land Agent for a deed, and, if she neglected to do so, the risk was hers.

If there were conflicting assignments by Fairbanks, it was for the Land Agent to decide who was the true assignee. His decision to convey to Fairbanks, junior, is conclusive.

4. The deed of Fairbanks, senior, to Mrs. Reed, was one of release and quitclaim, and would not estop him from ac-

quiring subsequently other and adverse title to the same land. *McCracken* v. *Wight*, 14 Johns., 193; *Comstock* v. *Smith*, 13 Pick., 116; *Crocker* v. *Pierce*, 31 Maine, 177. Much less would it estop Fairbanks, junior, from claiming the two acres, under a subsequent title from the State, even though he had notice of Mrs. Reed's quitclaim. Mrs. Reed's deed, then, conveyed to her nothing but whatever personalty or improvements her grantor had on the premises.

The grantee of Fairbanks, junior, stands better than he, holding, as he does, through several mesne conveyances, without any pretence of notice of the conveyance to Mrs. Reed. Since the R. S. of 1841, possession by her grantee is not notice. Her deed not being in the line of the conveyance from the State, the record of it was not notice. *Murray* v. *Bullen*, 1 Johns. Ch., 566; Greenl. Cruise, tit., 32, c. 29.

5. But, conceding that the demandant holds the property charged with a trust in favor of Mrs. Reed's grantors, the trust estate cannot be set up against the holder of the legal estate in a court of law. *Rowe* v. *Reade*, 8 Term, 118, 122; *Jackson* v. *Chase*, 2 Johns., 84; same v. *Pierce*, id., 221; same v. *Van Slyck*, 8 Johns., 487; *Doe* v. *Wroot*, 5 East, 138, note; 1 Greenl. Cruise, tit. 12, " Trust," c. 3, § 62.

The opinion of the Court was drawn up by

KENT, J.—In this case, the demandant claims to recover, upon the strength of his legal title, the premises demanded. He shows a deed from the Land Agent of the State to Dennis Fairbanks, jr., assignee of Dennis Fairbanks, dated October 22, 1841, which includes the premises described in his writ, and traces title to himself by a deed from Dennis D. D. Fairbanks (who is the same person named in the deed from the Land Agent as Dennis Fairbanks, jr.) to T. J. Hobart, and from Hobart to himself and Whitaker, and from Whitaker of his portion to demandant. These deeds, which trace and convey the title directly from the State, make undoubtedly a *prima facie* case for the demandant.

The tenant puts in a resolve of the Legislature, of March

18, 1840, by which the Land Agent was "authorized to convey to Dennis Fairbanks, (senior,) or his assigns, lot number three in township F, Range 2, west of the east line of the State, on which lot he has erected a saw and grist mill." This is the same lot conveyed as above, by the Land Agent, to Dennis Fairbanks, jr., as assignee. The tenant then puts in a quit-claim deed from Dennis Fairbanks to Mary Reed, dated June 19, 1840, recorded July 3, 1840, of two acres, part of said lot No. 3, and the premises described in the writ in this case. He traces title to himself of these two acres by a series of quitclaim deeds.

The question is, whether the plaintiff is entitled to judgment for possession of the two acres thus conveyed.

The tenant contends that, irrespective of the resolve and the right and title under it, he produces the elder deed, and denies that, under our constitution and laws, a junior deed from the State is evidence of a paramount title. He insists that the feudal doctrine, that all lands are held mediately or immediately from the State, or sovereign power, is not and never has been in force here.

It may be granted that the State is not the only source of title, and that a deed from the State is not conclusive against a title from another source, clearly traced and legally established. But we do not think that a title traced directly from the State can be overthrown by the production of a quitclaim deed of an earlier date, from a third party, without any evidence of title, or claim, or right in such person.

If we look at the resolve introduced by the tenant, we find that Dennis Fairbanks, senior, is named as the person to whom the State extends its bounty, by authorizing the Land Agent to deed to him this land. Dennis Fairbanks, as we may well presume, having solicited this grant, and having afterwards acted under it, he, and those claiming under him, may very justly be estopped from denying the title of the State. Indeed, it is apparent that he never did deny or doubt that title; and there is no fact in the case which leads us to question it.

But the tenant claims that the resolve itself, without any

further action, did, by its terms, convey the fee in the whole lot, and that, therefore, Dennis Fairbanks had a perfect title when he conveyed the two acres to Mary Reed.

It is apparent that, from the earliest times, in Massachusetts, and in this State since the separation, it has been held that proprietors of land in common, who acted in a corporate capacity, could alienate their lands and transfer the title by vote without deed. This right, however, was derived from and depended upon the peculiar language of the statute by which such proprietors were " empowered to order, manage, improve, divide and dispose of their common lands in such way and manner as shall be concluded and agreed upon by the major part of those interested, at any legal meeting." As stated by C. J. MELLEN, in *Thorndike* v. *Barrett,* 3 Maine, 386,—"This power, given to proprietors, is a peculiar one, a power of agreeing on the mode of dividing and disposing of their property, a power which persons in their individual capacity do not possess; they must conform to those principles and modes of conveyance which our statutes have expressed. The difference is important." The particular point to be observed is, that the power to pass title by vote is anomalous, and limited to the single case of proprietors of common land, and as to them rests entirely upon a statute grant. *Folger* v. *Mitchell,* 3 Pick., 400, and cases cited by the Court in that case.

The State, however, may grant a title by a resolve. This was decided in *Mayo & al.* v. *Libbey,* 12 Mass., 339, and has been since reaffirmed. But it does not follow, that every resolve which contemplates a conveyance, at some time, necessarily, by its terms, conveys a fee instantly, without any further act. The distinction is well illustrated in the above case, and the cases of *Lambert* v. *Carr* and *French* v. *Harlow,* both in 9th Mass.

The resolve in favor of settlers in Hampden clearly expressed a purpose to grant a release of the Commonwealth's title at once, and by its own terms. The language was,—" Resolved that *there be, and hereby is,* released to each of the inhabitants of Hampden, who settle, &c., all the right and

title of this Commonwealth. to one hundred acres of land in severalty," &c.

In the case of settlers in Bangor, (9 Mass., 187,) the resolve declared that all the settlers in that town, before a certain time, should be entitled to deeds of their respective lots, upon paying, &c. In the latter case, there are no words of grant, release or confirmation, but simply a prospective provision for a deed.

The Court accordingly held that the resolve in favor of the settlers in Hampden was a grant of title, and that in favor of Bangor was not; and that a deed was necessary to pass the title to these settlers.

The distinction seems to be, that, where the resolve contains words of grant, or release, or confirmation, or a clearly expressed intent to make a conveyance of the title at the time, the title may pass by force of the resolve alone. This, perhaps, would follow, where the grant of title was clearly expressed, although the resolve contemplated a deed to be given to confirm the title. But, where the resolve does not contain any words of grant, but simply authorizes a public officer to convey a lot to a person named, or his assigns, the title will not pass until such deed is executed. *Thorndike* v. *Richards*, 13 Maine, 430.

In this case, the lot could not have been legally taken on execution as the property of Dennis Fairbanks, until a deed had been made to him. No title passed to him by virtue of the resolve alone.

The resolve, apparently, was passed to give to Fairbanks the rights secured by the statute of 1838, c. 354, § 2, (R. S. of 1841, c. 3, § 28,) to those who might erect a saw and grist mill on townships lotted for settlers. Fairbanks had erected such mills in township F, before the passage of the law. That statute provided that those who erected the mills should "be entitled to a deed of such lot." This resolve provides "that the Land Agent is hereby authorized to convey to Dennis Fairbanks, or his assigns, lot No. three." There are no words of grant, or release, or confirmation, in either law. It was a

donation from the State that was intended. The State received nothing directly to itself. In view of a public interest and benefit by the erection of the mills, it proposed to confer its right in a lot of land. The State, before conveyance by the Land Agent, was not holding the land as trustee for its intended beneficiary. It is not the case where a vendor of real estate has received the purchase money under an agreement to sell and convey.

The tenant insists that, by the deed to Mary Reed, she became the assignee of the two acres, and that the deed to Dennis Fairbanks, jr., from the Land Agent, was void and inoperative, at least, as to the two acres, because he was not the assignee, in fact. He contends that there is no legal evidence that he was ever designated by his father as his assignee, and that the letter of Dennis Fairbanks, senior, to the Land Agent, if admitted, does not make him such assignee, because it is not a deed. The evidence that the father signed the letter or paper introduced, is apparently deficient as proof of that fact, as the witness (Mr. Blake) only says that he " saw a letter from Dennis Fairbanks, in his handwriting, in the land office ; that he has seen him write, and that the letter was wafered on to the back of the deed." The original deed and letter were not produced at the trial. This deficiency in proof might, probably, be easily supplied, if necessary. The important question is, how far is the action and deed of the Land Agent conclusive upon this point as to the assignee. The deed is to "Dennis Fairbanks, jr., assignee of said Dennis Fairbanks," and declares that the deed is executed by the Land Agent, by virtue of the authority in the resolve.

The first question is, whether this is not *prima facie* evidence that the person named was the assignee. Is the demandant obliged to prove, by evidence *aliunde*, that he was such assignee ? Can third parties, who show no connection with the title from the Land Agent, interpose a valid objection to the title of demandant, until he has proved the fact of assignment, and the legal right of the son to take the deed as assignee ? We think not. The Land Agent was authorized

to give a deed to an assignee. He has given such a deed, which is, *prima facie*, sufficient.

But the tenant urges, if we admit the deed to be *prima facie* sufficient, yet, that he has shown, by evidence, that Mary Reed was in fact the legal and rightful assignee of the two acres deeded to her; and that, therefore, the deed of the Land Agent is void. This raises the question whether the decision of the Land Agent, and his conveyance, accordingly, to a person as assignee, is conclusive as to a party situated as this tenant is.

In the cases of *Lambert* v. *Carr* and *Harlow* v. *French*, 9 Mass., before cited, a question very similar to the one before us was raised and determined. By the resolve therein referred to, the agents for the sale of Eastern lands, corresponding in powers and duties to the Land Agent of the State, were empowered and directed to convey by deed to the actual settlers in Bangor, or their legal representatives, their respective lots of one hundred acres each. This committee deeded a lot to Stetson, Lapish and French, describing them as " assignees of James Budge." The tenants offered to prove that Budge was not a settler on that lot; but that their ancestor was in truth and fact the settler entitled to the deed. In the case of *Harlow* v. *French*, the question was, whether the boundaries described in the deeds of the committee were conclusive, notwithstanding the evidence offered of a mistake as to the true line, and the adjudication of referees showing such to be the fact.

The Court, in these cases, decided that the determination of the agents was conclusive on both points, viz.—the persons entitled to, and the limits of the respective lots. The Court very forcibly say, that " any other construction would, in our opinion, render the resolve of the Legislature void and useless, or mischievous in the highest degree for its uncertainty, and by rendering it the source and occasion of endless quarrels and contentions. If a transient possession of land might thus become a title, what committee or judicial court can ever settle the question who was the first settler, or who

are his representatives? Until revoked by the government, (if it has the power, which is questioned,) that grant by the agents continues in full force, and is an exclusive title to the individual to whom it is made, against all other individuals."

It is true that, in this case, the donee was named in the resolve, and, if no other person could have taken the title by the terms of the resolve, a deed to any other person by the agent, as between the donee named and the State, might have been void or inoperative. But this resolve provides that the deed may be given to " an assignee," by the Land Agent.

The Land Agent determines that Dennis Fairbanks, jr., is such assignee, and deeds accordingly; and this determination is binding and conclusive upon the parties now before us. Any other construction would leave land titles from the State, which have been transmitted through many different tenants, uncertain and dependent upon parol or other proof of a mistake in a matter of fact by some public officer many years before.

The legal title to the whole lot passed to Dennis Fairbanks, jr. The deed is unconditional. There is nothing in the resolve which contemplates any condition as to the mill lots. The requirements as to settling duties apply only to the other lots taken up by individuals, and which are to be deeded by the State without price, in consideration of the building of the mills, but such lots to be subject to settling duties. Had there been a requirement that settling duties should be performed on the mill lot, the State only could take advantage of the omission.

The tenant further contends that, if the legal title did pass to Dennis Fairbanks, jr., he took it charged with a trust.

If there was any trust, it does not appear that in this suit at law it could be interposed to prevent the demandant from recovering his legal estate. A court of equity only could properly enforce the trust. But, as the facts are before us, and as we understand that other cases of dispute in reference to the titles of this lot have arisen, we may properly express our views on this point. The State did not hold the land,

after the passage of the resolve, as trustee of Fairbanks, senior, as before stated; and had no actual notice of any interest in Mrs. Reed, when the Land Agent gave his deed. But the tenant contends that Dennis Fairbanks, jr., took and held it, subject to a trust in favor of Mrs. Reed. There is clearly no declaration of trust in writing. The deed to her is a release and quitclaim of grantor's right and interest in two acres. There is no writing in the case which "creates or manifests" a trust. By the statute, "all trusts concerning land" must be thus shown, except such as arise by implication of law. The trust that arises by implication of law is when the money is paid by one party and the deed taken by another. *Buck* v. *Pike*, 11 Maine, 9; *Baker* v. *Vining*, 30 Maine, 121; *Hunt* v. *Roberts*, 40 Maine, 187.

No money was paid to the State by any one. Mrs. Reed had paid nothing and done nothing towards erecting the mill which was the moving cause for the State's bounty. No trust by implication, as to the State, could arise on that ground.

If the deed from the State had been given to Dennis Fairbanks, senior, it might have been necessary to decide at law whether, by the terms of the deed to Mrs. Reed, this after-acquired title would enure to her benefit. But no such question arises.

Dennis Fairbanks, jr., who took the title, has never, in writing or otherwise, created or manifested a trust in favor of Mrs. Reed. She did not aid in obtaining the title, and no implied trust arises. His knowledge of the fact (if it was established that he did know that his father had given a quitclaim deed to Mrs. Reed) would not create or establish a trust. If the resolve alone had given his father a legal title, such actual knowledge might perhaps have prevented him at law from setting up an after acquired title, if her deed had not been recorded; but would not create a trust to be enforced in equity.

There is no sufficient evidence of any express or implied trust in favor of Dennis Fairbanks, senior. If his object was to place the title in his son to prevent his creditors from levy-

ing upon the land, this would be clearly illegal and fraudulent, and no Court could sustain such a trust.

But, if an implied trust, as against Dennis Fairbanks, jr., could be raised, it would be difficult, upon this evidence, to fix that trust upon the demandant. It is sufficient notice, to subsequent purchasers, of a trust which is expressly declared in a deed, to show that the deed was recorded. R. S. of 1857, c. 73, § 12; R. S. of 1841, c. 91, § 32. But, by the same statute, § 12, it is provided, " that the title of a purchaser, for a valuable consideration, cannot be defeated by a trust, however declared or implied by law, unless the purchaser had notice thereof." This is but an affirmation of the well settled doctrine in law and in equity. The evidence in the case would hardly be sufficient to charge such notice as the law requires, upon either Hobart or Cary and Whitaker.

Dennis Fairbanks, senior, took possession of lot No. 3, as early as 1828 or 1829, and continued that possession until he gave his deed to Mary Reed, in 1840, of the two acres; and the possession of the two acres has been continued by Mary Reed, and those claiming under her, to the present time. The possession, whilst the title remained in the State, even if adverse and exclusive in its nature, could not operate to disseize or limit the State. A title cannot be acquired by adverse possession of the land of the State, whilst the title and property is in the State.

The possession in this case has been continued less than twenty years since the deed from the State, and therefore the statute of limitations as to the title does not apply.

But it is equally clear that the possession has been of such a nature, that it entitles the defendant to betterments. This is not denied by the demandant.

The result is, that the demandant has sustained his title to the demanded premises, and is entitled to judgment in his favor according to law. The tenant is entitled to betterments. The value of the improvements by defendant, and those under whom he claims, and the value of the land, without such improvements, at the time of trial, and also at the

time Dennis Fairbanks went into possession of lot No. 3, to be estimated and determined by Washington Long and Benjamin L. Staples, and, if they cannot agree, they may choose a third person as umpire, as agreed by the parties, according to the report of the case.

The case to stand until report of said referees, and judgment thereafter to be rendered as in case of a verdict.

TENNEY, C. J., RICE, APPLETON, CUTTING and MAY, JJ., concurred.