**BANK OF MAINE**

v.

**Lionel GIGUERE.**

Supreme Judicial Court of Maine.

Aug. 29, 1973.

Sanborn, Moreshead & Schade, by Richard B. Sanborn, Augusta, for plaintiff.

Marden, Dubord, Bernier & Chandler, by Albert L. Bernier, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

This action for a Declaratory Judgment involves the respective rights of the parties with regard to present and proposed uses of a parking area under a lease. Plaintiff bank, as present owner and Lessor of the building and adjacent parking lots under consideration, seeks to build a drive-in teller's unit on the parking lot to the rear of the portion of the building occupied by the bank, and Defendant-Lessee seeks to disallow such use of the parking lot under his claimed leasehold right to use of the entire parking facility in common with the Plaintiff.

The lease was executed in 1966 between the Plaintiff's predecessor in title and the Defendant. It conveyed to the Defendant a leasehold interest in the *entire* building [1]

"together with the present unbuilt upon parking area of Lessors lying to the west of said store premises".[2] Defendant's rights, however, were subject to the rights of the then occupant of the south half of the building, J. C. Penney Company. Those rights of J. C. Penney Company, derived from an earlier lease which would soon expire, were described in Defendant's lease as follows:

"C. *Temporary Exception*—Excepting and reserving from the above described premises the premises and the access and parking rights included under the leasehold rights of Penney under a lease dated April 17, 1940, as from time to time heretofore amended and extended, which now expires July 31, 1969, but may be terminated sooner on 12-months prior notice by Penney; and without limiting the foregoing, meaning and including the southerly portion of the Building situate on the above described premises together with parking privileges in the rear thereof, this exception and reservation to continue only during the period hereinafter defined as the 'Temporary Exception Period'."

The lease also obligated Defendant to keep the entire parking lot free of rubbish, snow and ice. It required the Lessor to regrade and repave the parking area in the event this became necessary as a result of the Waterville Urban Renewal Authority's street construction but it freed the Lessor from any "further or other obligations or responsibility with respect to such parking area".

The lease, therefore, gave Defendant immediate occupancy of the north half of the building and exclusive use of the north half of the parking area. It also gave Defendant eventual exclusive occupancy of

1. At the time of the execution of the lease a section of the building, not of interest here, had been condemned for highway purposes and was being razed.

2. The lease also provided that in the event the Lessors should acquire as additional property, the so-called Library parking lot adjoining the existing parking lot (which did occur), this additional property should be graded and paved by the Lessee and included in the demised premises.

the entire building and eventual exclusive use of the entire parking lot together with the Library parking lot if it was later acquired by the Lessor.

Defendant entered into occupancy establishing a retail market in the north half of the building and using the entire parking lot in common with J. C. Penney Company.

When the J. C. Penney Company lease expired, however, Defendant had lost interest in occupying the south half of the building and the Plaintiff's predecessor and Defendant renegotiated the situation. On June 26, 1969 they executed an amendment to the original lease clearly excluding from the leased premises the south half of the building, readjusting rentals and reserving to the Lessors rights of installation and maintenance of "all pipes, ducts, conduits, wires, apparatus and appliances" located in the leased portion but serving the south half. The amendment left unclear, however, the parties' rights to the parking area. As to this, the amendment reads:

"1. The Temporary Exception Period shall continue throughout the full term.

2. The leased premises shall not include (and shall expressly exclude) those portions of the interior and exterior of the Building lying south of the centerline of the partition now separating the store numbered 178 Main Street (now occupied by J. C. Penney Company under its lease referred to in Paragraph I–C of the Basic Lease) and the store numbered 180 Main Street (now occupied by Lessee) ; and the leased premises shall also not include (and shall expressly exclude) the basement portion of the Building demised to J. C. Penney Company as aforesaid.

3. Lessors expressly reserve to Lessors and those claiming by, through and under Lessors, and to the customers, prospective customers, employees and business invitees of any of them, the right to use, in common with Lessee and with Lessee's customers, prospective custom-ers, employees and business invitees, the unbuilt-upon parking area of Lessors lying to the west of the Building, for purposes of non-fee parking, and for access and egress in connection with the portions of the Building not demised to Lessee."

Shortly after the execution of the Amendment the Plaintiff purchased the building, renovated the south half and now occupies it as a commercial bank. The Plaintiff also negotiated a lease for the Library parking lot which became a part of the Lessor's total parking area. It is the rights to the total parking area which are now in dispute. The entire area is presently used for non-fee parking by customers of both the Plaintiff bank and the Defendant's supermarket. The Defendant also makes use of the area in the immediate rear of his store for the unloading of his merchandise from trucks.

The Plaintiff proposes erecting a drive-in window structure on the parking lot to the rear of the bank and opposite one of the ingress/egress points. The Defendant objects to this as an interference with his claimed right to use of the entire parking lot in common with Plaintiff.

Plaintiff's complaint seeking a Declaratory Judgment as to the rights of the parties in the parking lot and Defendant's answer were heard before a Referee.

The Referee found: 1) that the Defendant-Lessee had not acquired an easement in the parking area lying west of the south half of the building but, rather, only a permission or license to use it; and 2) that the Plaintiff-Lessor's proposed erection of the drive-in facility would be a fair and reasonable use of the land and not an unreasonable interference with the Plaintiff's rights under the lease.

■ As the parties had reserved the right to object to the acceptance of the report of the Referee—and as Defendant did object—both the Referee's findings of fact and of law were presented for approval to

the Justice of the Superior Court. The Referee's findings of fact were conclusive unless clearly erroneous. M.R.C.P., Rule 53(e)(2); 1 Field, McKusick and Wroth, Maine Civil Practice, §§ 52.7, 53.4. The "clearly erroneous" test does not apply to the Referee's conclusions of law. Osteopathic Hospital of Maine v. City of Portland, 139 Me. 24, 26 A.2d 641 (1942). The Justice accepted the report of the Referee. The Defendant filed an appeal from the Justice's action.

■ We are well aware that the report of the Referee is not a judgment and, ordinarily, neither is the accepatnce of the report a judgment. Adams v. Alley, Me., 308 A.2d 568 (1973). The Referee was also aware of this and he closed his report with the words:

> "Judgment should be rendered in accordance with these findings."

The Justice's action on Plaintiff's motion for acceptance of the report was by him entitled "Decision on Motion for Acceptance of Referee's Report". His "decision" reads:

> "This Court finds no reason to disturb the report of the Referee, and therefore, grants the motion for acceptance of the Referee's report."

The "decision" is docketed as "Decision on Motion for Acceptance of Referee's Report."

■ Is this "decision" a judgment and thus ripe for appeal? M.R.C.P., Rule 73(a). The action is one in which the Plaintiff has asked that the Court "issue its declaratory judgment fixing and determining the rights of the parties" as to use of the parking lot. No award of damages or injunctive relief were sought by the Plaintiff or recommended by the Referee which would have required a specific judgment of the Court to make them effective.

We believe that the language of the Justice —although somewhat equivocal—was intended to be his judgment that the rights of the parties are as the Referee has determined them and that the Justice was adopting the recommendation as his judgment. We will treat it as such.

We must now test the correctness of the Justice's adoption of the Referee's findings by the same standards which the Justice was required to use when he adopted them.[3]

■ The controlling issue is one of interpretation of the agreement as amended. The construction of a lease, like that of other written contracts, is a matter of law. Loose-Wiles Biscuit Co. v. Deering Village Corp., 142 Me. 121, 48 A.2d 715 (1940).

■ The cardinal principle, of course, is that the intention of the parties should be determined, if possible, from the language of the instrument, viewed in the light of the circumstances under which it was made unless a rule of law or policy forbids. Forbes v. Wells Beach Casino, Inc., Me., 307 A.2d 210 (1973); Bell v. Jordan, 102 Me. 67, 65 A. 759 (1906).

■ An examination of the language of the two instruments satisfies us that the Referee and the Justice erred in their interpretations of the contract as amended.

The amendment of 1969 must be read in relation to the original lease which it modifies. The Defendant retains all his original rights which he did not release by the amendment. Under the original contract it is clear that Plaintiff got a leasehold interest in the *entire* building and the *entire* parking lot—but his use of the south half of the *building* was postponed until the expiration of the J. C. Penney Company lease. His right to use of the south half of the *parking lot* during the term of the J. C. Penney lease was subject to "the access and parking rights included under the

---

3. "The findings of a referee, to the extent that the court adopts them, shall be considered as the findings of the court." M.R.C.P., Rule 52(a).

leasehold rights of Penney" which were further described as being in the rear of the south half of the building. As the Penney lease is not included in the record we do not know whether Penney's rights in the south half of the parking area gave Penney *exclusive* occupancy or only the right to occupy in common with the lessee of the north half of the building.

It is agreed that as a result of the amendment the Defendant gives up all his original ultimate rights to the south half of the building and also his ultimate right to the *exclusive* use of the northerly half of the parking lot. The dispute lies as to whether he retains *any* leasehold rights in the south half of the parking area. The Plaintiff insists that the Defendant has *none*—the Defendant maintains he has a leasehold interest in common with the Lessor.

Paragraph 1 of the amendment provides that:

"The Temporary Exception period shall continue throughout the full term."

Considered alone, Paragraph 1 would deny to the Defendant all use of the south half of the building (which is not disputed) and whatever parking privileges J. C. Penney Company had enjoyed under the lease. When read in connection with Paragraph 3, the uncertainty as to exactly what parking privileges J. C. Penney Company did have (that is, exclusive or in common) is compounded by the provision, inconsistent with Paragraph 1, that would give the Lessor the use in common with the Defendant lessee of the parking area lying "to the west of the Building".

■ We must examine all parts of the instrument in relation to one another, to see " 'how far one clause is explained, modified, limited or controlled by others.' " 4-One Box Machine Makers v. Wirebounds Patents Co., 131 Me. 356, 366, 163 A. 167, 172 (1932).

We find these factors significant:

1) The lease described J. C. Penney Company's rights as being "together with parking privileges to the rear thereof". Its language falls short of describing *exclusive* parking privileges in a parking lot located at the rear of part of a building which building, at the time of the J. C. Penney Company lease, was apparently occupied by three different stores. In the absence of production of the J. C. Penney Company lease itself we are unable to construe these J. C. Penney Company rights as having been exclusive.

2) The Lessors chose to emphasize the complete exclusion of Defendant from the south half of the *building*. If, in fact, the J. C. Penney Company rights to the parking lot were exclusive and if it was intended by the parties that Defendant was to be excluded from leasehold rights in this south half of the parking lot as well, it would seem that the specific exclusion in Paragraph 2 would have included this parking area.

3) In Paragraph 3 the Lessors chose to reserve for themselves *in common with the Defendant* an area which was described not as the parking area lying to the west of the *north half* of the building, but rather the parking area lying to the west of the *building*.

This language leads us to the conclusion that the parties intended that the Defendant, having given up his rights to occupancy of half of the building, was also exchanging his leasehold rights to the exclusive use of the entire parking lot for a leasehold right to use the entire lot, in common, with the occupant of the other half of the building. In our opinion the language of the two instruments in their entirety must be construed to give the Plaintiff and Defendant the right to reasonable use in common of the entire area to the west of the building, including the library lots available for their use, for non-fee parking and access and egress in connection with their respective premises for their customers, prospective customers,

employees and business invitees. The Defendant's right is a leasehold right.

The Referee, who had found that Defendant had only a privilege to use, in common with the Plaintiff, that part of the parking lot lying west of the south half of the building, also found that Plaintiff's proposal to erect and maintain a drive-in window structure on that part of the lot would not be an unreasonable intereference with such rights as Plaintiff has to this portion of the parking lot. Our conclusion that the agreements created a tenancy in common as to Plaintiff's and Defendant's use of the entire area places Plaintiff's proposed use in a completely different light.

Both Plaintiff and Defendant as tenants in common, were entitled to the reasonable use of the entire parking area for purposes of parking, ingress and egress, subject only to the other's equal right. Neither has a right to appropriate any particular portion of the lot for a use which excludes the other from that portion, without the other's consent. Foisy v. Bishop, Me., 232 A.2d 797 (1967); Morrison v. Clark, 89 Me. 103, 35 A. 1034 (1896); 20 Am.Jur.2d, Cotenancy and Joint Ownership §§ 33, 34; 86 C.J.S. Tenancy in Common § 25.

As a practical matter an automobile properly parked in a parking space by a customer of one cotenant does for the time deny a customer of the other cotenant the use of the identical space but reasonably so because such a use is the purpose of the particular cotenancy. Carter v. Bailey, 64 Me. 458, 464–465, 18 Am.Rep. 273, 277 (1874); 20 Am.Jur.2d, Cotenancy and Joint Ownership § 37. On the other hand, the Plaintiff's maintenance for its own benefit of a building upon an area to which the Defendant has been given leasehold rights to use for parking, ingress and egress cannot be viewed as a reasonable use of the common property. Plaintiff's plan would result in an unreasonable inter-

ference with Defendant's rights to the use of the property as a tenant in common under the lease.

The entry will be:

Appeal sustained.

WEBBER, J., sat at oral argument but retired before the adoption of this opinion.