**BOOTHBAY HARBOR
CONDOMINIUMS,
INC.**

v.

**The DEPARTMENT OF TRANSPORTA-
TION, State of Maine and the Inhabit-
ants of the Town of Boothbay Harbor.**

Supreme Judicial Court of Maine.

Jan. 31, 1978.

Sanborn, Moreshead, Schade & Dawson by Peter T. Dawson, (orally), Augusta, for plaintiff.

Thomas Reeves (orally), Dept. of Transp., Lester A. Olson, Augusta, Bernstein, Shur, Sawyer & Nelson by Gordon F. Grimes (orally), Barnett I. Shur, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

In March, 1975 plaintiff Boothbay Harbor Condominiums, Inc. instituted a civil action in the Superior Court (Lincoln County) against defendants Department of Transportation of the State of Maine and Inhabitants of the Town of Boothbay Harbor. The complaint alleged that the public was trespassing upon a dam and road in Boothbay Harbor claimed to be the plaintiff's and asked for a judgment declaring the public's continued use of the dam and road unlaw-

ful. Plaintiff also sought $1.5 million in damages and an injunction against the public's use of the road and dam until plaintiff had been compensated for the invasion of plaintiff's property rights.

The answers of defendants denied plaintiff's claims and asserted the existence of rights of the defendants as well as the public in the dam and road defeating any recovery by plaintiff.

By agreement of the parties the case was referred pursuant to M.R.Civ.P., Rule 53. Under the Agreement and Order of Reference the Referee was to "make a report on all issues of fact and law, exclusive of the issue of damages", and the parties specifically reserved the right to object to the Court's acceptance of the Referee's report.

The report of the Referee recommended judgment for defendants. After plaintiff had seasonably filed objections to the report the presiding Justice in the Superior Court accepted it, and judgment was entered in favor of the defendants on November 23, 1976.

Plaintiff has appealed from the judgment. We deny the appeal.

The dam and road in question were located at the outlet of Campbell's Cove between Southport and Boothbay Harbor. Prior to 1860 the public crossed the waters by ferry. Following an abortive attempt to provide passage over the waters by a toll bridge, the Legislature, by P. & S.L.1859, Chapter 305, chartered a company to build and maintain a free bridge. It was completed in 1860. By P. & S.L.1879, Chapter 111 the Legislature chartered Maine Ice Company as a corporation, formed by Eben D. Haley and others, authorized to

"build and maintain a dam to exclude the tide waters entirely from Campbell's Cove, at or above the present highway bridge . . . for the purpose of creating an ice pond."

The dam was completed in 1880, having been constructed to provide a "firm roadbed" on the top and thus serve the dual function of dam and road. It is unclear in the record whether the dam was built at the same site as the bridge. In any event, the bridge was removed and thereafter the dam provided the only roadway over the Cove.

In 1879 the voters of Boothbay Harbor appropriated $200 annually for ten years "for the exclusive use of a good and sufficient road across said Company's dam." By a series of conveyances plaintiff corporation ultimately acquired title to land formerly owned by Eben D. Haley on the shore of Campbell's Cove. Plaintiff's present claim is that by these conveyances he acquired title to the dam and road here at issue.

## I.

We confront a threshold procedural question:—whether plaintiff's appeal must be dismissed because of plaintiff's omission to file a statement of points to be relied on in the appeal, as required by Rule 74(d) M.R.Civ.P.[1] Although we have tended to apply Rule 74(d) strictly, *National Advertising Company v. Inhabitants of Town of York*, Me., 345 A.2d 512 (1975); *State v. Harriman*, Me., 259 A.2d 752 (1969), supplemented in 265 A.2d 706 (1970); *State v. Smith*, Me., 244 A.2d 71 (1968); *Frost v. Lucey*, Me., 231 A.2d 441 (1967), lack of a required statement of points does not affect our jurisdiction, and we have a sound discretion to take cognizance of an appeal despite the omission of a statement of points on appeal. *Indemnity Insurance Company v. Pioneer Valley Savings Bank*, 343 F.2d 634 (8th Cir. 1965); *Foremost Dairies v. Ivey*, 204 F.2d 186 (5th Cir. 1953).

The purpose of requiring a statement of points on appeal is to provide the appellee with a basis for determining

1. Rule 74(d) M.R.Civ.P. provides:

"(d) *Statement of Points.* If the appellant does not designate for inclusion the complete record and all the proceedings and evidence in the action, he shall serve with his designation a concise statement of the points on

which he intends to rely on the appeal, and any point not so stated may be deemed waived. No such statement shall be deemed insufficient if it fairly discloses the contentions which the appellant intends to urge before the Law Court."

whether the appellant's designations to make the record on appeal are themselves adequate to allow a proper disposition of the issues which will be involved in the appeal, or whether the appellee must make supplemental designations.[2] Field, McKusick and Wroth, *Maine Civil Practice*, § 74.7, p. 202.

In the instant situation the omission of plaintiff to file the required statement of points on appeal caused no prejudice to defendants as appellees in respect to the protection conferred by Rule 74(d). Defendants made no motion to dismiss the appeal pursuant to Rule 73(a) M.R.Civ.P.[3] Even though the filing of such a motion is not a pre-requisite to dismissal of an appeal under Rule 74(d) M.R.Civ.P.[4] the absence of it, here, suggests that defendants were not really burdened in their efforts as appellees to assess the sufficiency of the record designated by the plaintiff-appellant. In any event, within a few days of the filing of the designation of plaintiff-appellant, defendants filed their own record designations in which they saw fit to bring before us the entire record of the proceedings at nisi prius.

In similar circumstances—and, indeed, at a time when the statement of points also served as appellee's notice of the issues to be met on appeal—this Court refused to dismiss, or remand, for lack of a statement of points on appeal. *Waltz v. Boston &*

*Rockland Transportation Company*, 161 Me. 359, 367, 212 A.2d 431, 435 (1965).

A makeweight circumstance is present, here, favoring consideration of plaintiff's appeal. Plaintiff had filed timely objections to the Referee's report, thus to provide defendants notice of the issues to be covered on appeal as well as a basis to evaluate the sufficiency of the record designations of plaintiff-appellant.

We therefore exercise the discretion reposing in us to take cognizance of the instant appeal notwithstanding the omission of plaintiff, as appellant, to file the statement of points required by Rule 74(d).[5]

We limit the scope of our review to the issues we deem fairly comprehended within the written objections filed by plaintiff corporation to the report of the Referee. See *Thompson v. Willette*, Me., 353 A.2d 176 (1976); *Cunningham v. Cunningham*, Me., 314 A.2d 834 (1974); *Dubie v. Branz*, 145 Me. 170, ("rescript" inadvertently published) 146 Me. 455 (full text of opinion), 73 A.2d 217 (1950).

## II.

Plaintiff complains on appeal that the judgment[6] failed to declare the rights of the parties in accordance with the issues raised by the pleadings, evidence and reference agreement.

2. Prior to 1967, appellant and appellee were required to file their briefs simultaneously. Under that practice the statement of points (then Rule 75(d)) afforded appellee notice of the issues appellant intended to pursue on appeal. With the sequential filing of briefs now prescribed by Rule 75(a) M.R.Civ.P., appellee no longer has need of a statement of points to become informed of the issues on appeal since appellant's brief defines the issues on appeal for the appellee. Advisory Committee Note (Nov. 1, 1969), Field, McKusick and Wroth, *Maine Civil Practice*, p. 193. See also Committee Note to Former Rule 75(b) of F.R.C.P. (abrogated in 1968), which was comparable to present Rule 74(b) M.R.Civ.P.

3. Rule 73(a) M.R.Civ.P. states:
   " . . . The court on motion shall enter an order that the appeal be dismissed for such failure [failure of appellant to take steps to

secure the review of the judgment appealed from] if the appellant does not within 10 days file with the court a motion seeking to be relieved from the consequences of such failure."

4. Rule 74(d) M.R.Civ.P. says:
   " . . . any point not so stated may be deemed waived."

5. By this decision we do not suggest that the procedure provided in Rule 74(d) may be quietly overlooked. Our holding is based on facts peculiar to this case.

6. The judgment provided:
   "The Court having accepted the Referee's report dated September 3, 1976, judgment shall be entered as follows:
   "Judgment for Defendants with costs."

■ The judgment incorporated by reference the report of the Referee and thus constituted a determination of "the rights of the parties . . . as the Referee . . . . determined them." *Bank of Maine v. Giguere*, Me., 309 A.2d 114, 117 (1973).

We therefore deem the contention of plaintiff now under discussion to be directed to the issue raised by plaintiff's first objection to the Referee's report[7]—that the Referee should have decided concerning plaintiff's claims to fishing and flowage rights as well as its claim to the dam and bridge.

■ The contention fails. First, the Referee had authority to determine only the issues actually submitted to him. Rule 53(e)(1) M.R.Civ.P.; *Cunningham v. Cunningham*, supra. The Order of Reference directed the Referee to report on all issues of fact and law exclusive of the issue of damages. A pre-trial order[8] limited the issues to those necessary for the rendition of a

"  .  .  .  declaratory judgment in which plaintiff seeks to establish title to a  .  .  .  certain dam and/or bridge, approach roads and dam road in Boothbay Harbor."

7. This objection was as follows:

"The Agreement for  .  .  .  Reference provided that the Referee would report on all issues of fact and law and said report fails to report on the factual and legal issues regarding Plaintiff's claim to exclusive rights to the property surrounding the dam, the right to use the pond, flowage rights on the property surrounding the pond, up to two feet beyond the highest tide and fishing rights."

8. Proceedings before a Referee are normally conducted in the same manner as a trial to the court. Field, McKusick and Wroth, *Maine Civil Practice* § 53.3; 76 C.J.S. References § 83, p. 228.

9. During the hearing the question of the hearing's scope arose incidentally: once in the opening remarks of plaintiff and again during a witness' testimony. At both points the Referee found it unnecessary to decide the issue, and plaintiff did not attempt to argue the issue at any other point in the hearing. Plaintiff's failure actively to pursue the question of its interest in these so-called "appurtenant" rights

Plaintiff indicated no objection[9] to the provisions of the pre-trial order which controlled the further course of the proceedings. Rule 16(c)(4) M.R.Civ.P., *Frost v. Barrett*, Me., 246 A.2d 198 (1968). Hence, plaintiff cannot now complain of an incomplete adjudication of the issues.[10]

■ Second, plaintiff's fishing and flowage rights may not properly be adjudicated in the absence of those persons, not here made parties to the action, required to be parties under 14 M.R.S.A. § 5963, i. e., those

"  .  .  .  who have or claim any interest which would be affected by the declaration  .  .  .  ."

Plaintiff's flowage rights should not be determined in the absence of other owners of land surrounding Campbell's Cove whose interests would be affected thereby. Plaintiff's fishing rights should not be determined in a proceeding to which the appropriate State agencies are not parties, the State having responsibility to regulate all fishing activities in its waters. *Woods v. Perkins*, 119 Me. 257, 110 A. 633 (1920).

### III.

■ We reject another appeal contention of plaintiff corporation that, contrary

strengthens the conclusion that it assented to such limitation of the scope of the hearing.

10. In its complaint plaintiff corporation asserted that it had acquired title to the dam, "  .  .  .  including all rights appurtenant thereto including that of flowage, dumping snow and fishing rights."

Plaintiff's prayer for relief, however, requested (1) declaratory judgment as to its title to the dam and the road only and (2) monetary damages and injunctive relief for alleged trespass on the dam and road by the public. Plaintiff's pre-trial memorandum claimed essentially the same rights and requested a determination of "the status of title of the property rights asserted by the Plaintiff  .  .  .  ." Although the language is ambiguous, it could be construed to request adjudication of the same interests claimed in Objection No. 1.

The Justice's pre-trial memorandum and order supersedes plaintiff's complaint and pre-trial memorandum, however, and its provisions are binding. Field, McKusick and Wroth, *Maine Civil Practice* § 16.5; *Beck v. Sampson*, 158 Me. 502, 186 A.2d 783 (1962).

to the finding of the Referee, plaintiff established a good title to at least a portion of the dam or road.

The Referee found that

" . . . the dam rests on land which was substantially, if not wholly, beneath navigable waters and thus owned by the State of Maine."

The finding of fact by the Referee as to the location of the dam is conclusive unless clearly erroneous. Rule 53(e)(2) M.R.Civ.P.; *Bank of Maine v. Giquere*, Me., 309 A.2d 114 (1973). Ample evidence supported this factual finding. P. & S.L. 1879, Chapter 111 granted to Maine Ice Company

" . . . authority to build and maintain a dam . . . at or above the present highway bridge. . . ."

The highway bridge, authorized by P. & S.L. 1859, Chapter 305, was to be built

" . . . with a suitable draw for the passage of vessels, not less than twenty-eight feet in width at the deepest channel passed over by said bridge, with such piers and machinery for opening and closing said draw as may be required to secure a safe and speedy *passage of vessels through the same* . . . ." (emphasis supplied)

While the Referee found it unclear whether the dam was built precisely at the location of the bridge, it was reasonable for him to infer that it was built at least in sufficient proximity to the site of the bridge to be at a place where the waters were navigable. Defendants presented evidence that ships navigated Campbell's Cove (now West Harbor Pond) in Revolutionary times, taking refuge from seizure.[11] Additionally, the testimony of plaintiff's president, George D. Whitten, indicated that at least part of the dam rests on land below the low water mark.

■ The Referee was correct in his conclusion of law that the State owns land below navigable waters. *Opinion of the Justices*, Me., 216 A.2d 656 (1966); *State v. Lemar*, 147 Me. 405, 87 A.2d 886 (1952).

In other circumstances the dam, as built on State-owned land, could be considered personalty. *Southard v. Hill*, 44 Me. 92 (1857). Here, however, the import of the entirety of the Referee's report is that the dam in question was regarded by all concerned as real estate.[12]

■ In *Bangor-Hydro Electric Company v. Johnson*, Me., 226 A.2d 371, 378 (1967) the criteria for determining whether personalty has become part of the realty on which it rests are stated to be whether:

"(1) it is physically annexed, at least by juxtaposition, to the realty or some appurtenance thereof, (2) it is adapted to the use to which the land to which it is annexed is put, or the chattel and the real estate are united in the prosecution of a common enterprise, and (3) it was so annexed with the intention on the part of the person making the annexation to make it a permanent accession to the realty, . . . which intention is not the hidden secret intention of the party making the annexation, but the intention which the law deduces from such external facts as the structure and mode of attachment, the purpose and use for which the annexation has been made and the relation and use of the party making it."

Special prominence is given to the last of these tests. Id; see also *Wedge v. Butler*, 136 Me. 189, 6 A.2d 46 (1939).

That the first two of the criteria are met in the instant situation is evident from the nature and purpose of a dam.

■ The additional criteria of intent involve, here, a question of fact, as to which a finding by the Referee is conclusive if supported by any evidence. *Bank of Maine*,

---

11. Defendants' Exhibit 3, "Excerpts from Book Entitled 'The Boothbay Harbor Region 1906–1960' by Harold B. Clifford."

12. The Referee makes no suggestion in any of his findings that the dam is to be treated as personalty. Rather, his findings are all based on principles of law pertaining to real estate. The Report also refers to "*other* real estate" than the dam and "interests in real estate *other* than rights to the . . . dam." (emphasis supplied)

supra; *Bickford v. Bragdon*, 149 Me. 324, 102 A.2d 412 (1953). Although the Referee made no express particular finding as to this issue of intent to treat the dam as real estate, such finding is implicit in the overall tenor of his report treating the dam as real estate. And ample evidence supports such view. The dam was constructed with a roadbed over the top, intended for use by the Town,[13] which paid $200 a year for a period of ten years to help defray expenses of the dam.[14] The construction of the dam suggests that it was intended to be a permanent structure, affixed to the realty. There is no evidence of any intent to reserve the right to remove the dam, nor is there any evidence of an express designation of the dam as personal property. Furthermore, examination of the deeds in plaintiff's chain of title to the mainland suggests that the grantors considered the dam to be realty and purported to grant title thereto.[15]

There is no evidence that the State conveyed its interest in this realty to plaintiff or its predecessors in title. The record contains no deed from the State, nor does it contain any evidence of such a deed.

█ The State may grant title by resolve, if the resolve contains words of grant, release, or confirmation, or a clearly expressed intent to make a conveyance of the title at that time. *Cary v. Whitney*, 48 Me. 516 (1860). Here, there is no evidence of such a resolve. The Referee determined, and we agree, that the language of P. & S.L. 1879, Chapter 111 [16] merely granted Maine Ice Company a license to build and

maintain the dam. "A license creates no interest in land . . . ." *Reed v. A. C. McLoon & Company*, Me., 311 A.2d 548, 552, n. 7 (1973)

P. & S.L. 1905, Chapter 140 authorized West Harbor Ice Company (a predecessor in title to the land on the shore of the Cove now owned by plaintiff) to construct and maintain a fishway around or over "their dam." [17] By its Objection No. 2.a. plaintiff asserts that the Referee "failed to recognize" this authorization. However, we find nothing in this Act purporting to grant title in the dam. The words "their dam" are reasonably taken as a means of identifying the dam rather than as a legislative acknowledgment of ownership. In any event, in accordance with the principles stated in *Cary*, supra, such informal language could not legally achieve a grant of title even had such been the Legislature's intent. The absence of any evidence that the State conveyed its interest in the real estate is fatal to plaintiff's case.

"It is a familiar rule that the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of the defendant. . . . ." *Blance v. Alley*, Me., 330 A.2d 796, 798 (1975)

## IV.

█ Plaintiff corporation maintains that at least part of the dam and approach road lies on its lands (land between high and low water marks). Plaintiff, however, as already noted, bears the burden of proving its title, *Blance*, supra, and, as to this

---

**13.** Defendants' Exhibit 3, "Excerpts from Book Entitled 'The Boothbay Harbor Region 1906–1960' by Harold B. Clifford."

**14.** Defendants' Exhibit 1, Agreement of Reference between the Town of Boothbay Harbor and the West Harbor Ice Company, July 24, 1913 (setting forth a vote of the Town in March, 1879).

**15.** Deed of Philip O. Gregory to Walter P. Jacob Industries, Inc., Lincoln County Registry of Deeds, Book 563, Page 314.
Deed of West Harbor Ice Company to Philip O. Gregory, Lincoln County Registry of Deeds, Book 520, Page 156.

**16.** P. & S.L. 1879, Chapter 111 provides:
"Be it enacted . . . That Eben D. Haley . . . be and hereby . . . [is] incorporated a body corporate by the name of the Maine Ice Company, with authority to build and maintain a dam to exclude the tide waters entirely from Campbell's Cove . . ."

**17.** P. & S.L. 1905, Chapter 140 provides:
"Section 1. The West Harbor Ice Company of Boothbay Harbor is hereby authorized and empowered to construct and maintain a fishway around or over their dam from tide waters to the water of its ice pond."

land, too, plaintiff has failed to carry that burden. Mr. Whitten attempted to describe the location of high and low water marks, using a rough drawing. However, Charles Foster, an engineering technician with the Department of Transportation testified that:

"Since 1880, nobody knows where the low water mark is along this upper region of Campbell's Cove."

In the absence of any evidence of specific high and low water marks, plaintiff has failed to prove title in it to the part of the dam and roads in question.

## V.

 The issues raised by plaintiff's objections to the Referee's report No. 2.b., 2.c., 2.d. and 2.e.,[18] require little discussion. In view of our decision, ante, that only the State could convey title to the real estate, it is sufficient to say that "recognition" by the Town of title in plaintiff has no legal significance.

## VI.

 Plaintiff contends that it was reversible error to disallow Plaintiff's Exhibit # 16 expressing the opinion of the chief counsel of the State Highway Department that title to the dam was vested in plaintiff. This issue was not raised in any of plaintiff's objections to the report of the Referee, and we therefore give it no cognizance in the instant appeal.[19]

## VII.

Plaintiff asserts, lastly, that the Referee erred in finding that "the public [has] ac-

quired rights in the dam for purposes of a public way." Because this point, too, was not raised in any of plaintiff's objections to the report of the Referee, we will not give it cognizance in this appeal.

The entry is:

*Appeal denied.*

*Judgment affirmed.*

DELAHANTY, J., sat at argument and conference but did not otherwise participate.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

---

18. "b. The agreement between West Harbor Ice Company, Plaintiff's predecessor in interest and the Town of Boothbay in 1879 recognized title in the dam.

"c. The failure of the report to recognize that in 1879 the people of the Town of Boothbay, by annual meeting, voted to pay the Maine Ice Company $200 a year for the use of a road across the company's dam, thereby recognizing title in the Plaintiff's predecessors, not only to the dam, but also to the road.

"d. The failure of the report to recognize that Plaintiff or its predecessors were taxed on the dam by the Town and paid taxes thereon at least for the years 1956 to 1968.

"e. Failure of the report to recognize that the arbitration agreement between the Town and the Plaintiff's predecessors recognized title in the dam to Plaintiff's predecessors."

19. We note that in any event there was no error. In view of our holding herein that the State had never conveyed its title to plaintiff either by a proper deed or by a legislative resolve meeting the requirements set forth in *Cary v. Whitney*, supra, the opinion of the chief counsel of the State Highway Department as to the title was irrelevant.