STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-00-15
ULH - HAN - 8/21/2002

Linda Carter Burroughs,
    Plaintiff

v.

Decision and Judgment

Acadia Investments, Inc.,
    Defendant

DONALD L. GARBRECHT
LAW LIBRARY

SEP 18 2002

Hearing in this matter was held on August 12, 2002. The plaintiff, a representative of the defendant and counsel for both parties were present.[1]

The parties own adjacent parcels of real property located on Ash Place in Bar Harbor. The street address for the plaintiff's parcel is 22 Ash Place, and the defendant's is 20 Ash Place. The common boundary of the parcels is the northern side of the plaintiff's property and the southern side of the defendant's. The length of that common boundary is nearly two hundred feet. The plaintiff alleges that through adverse possession, she also owns a strip of property roughly ten feet in width that runs along the entire length of her northern boundary, extending that far into the defendant's lot. The record shows – and the plaintiff does not dispute – that her record title included in the relevant deed descriptions does not encompass that disputed area. Thus, record title to that property lies with the defendant.

---

[1] In its present posture, this case involves one plaintiff and one defendant. This action was filed by the present plaintiff and her father, Harlan Carter. Mr. Carter died during the pendency of this case. The suggestion of death did not seek to substitute another party to represent any continuing interest that Mr. Carter's estate might represent.

Further, the prior owner of the defendant's parcel, Lura Jones, was originally named as a co-defendant. The plaintiff voluntarily dismissed any claim against her early on in these proceedings, presumably because she conveyed her interest in the property to the remaining defendant very close in time to the date when the plaintiff commenced this action.

1

"To successfully acquire title by adverse possession, the adverse possessor must prove by a preponderance of the evidence possession for a 20-year period that is actual, open, visible, notorious, hostile, under a claim of right, continuous and exclusive." *Loavenbruck v. Rohrback*, 2002 ME 73, ¶ 11, 795 A.2d 90, 93. The claimant must establish these elements by a "fair preponderance of the evidence," which means simply a preponderance of that evidence. *Streifel v. Charles-Keyt-Leaman Partnership*, 1999 ME 111, ¶ 3, 733 A.2d 984, 988. Here, the defendant does not appear to seriously challenge the plaintiff's adverse possession analysis, and the evidence nonetheless establishes affirmatively that the plaintiff has acquired an ownership interest in part – but not all -- of that area through adverse possession.

There are three distinct sections of the disputed strip of realty that must be analyzed separately in the context of the plaintiff's adverse possession claim. First, the plaintiff has established each element of a claim of adverse possession to that portion of the disputed area that runs between Ash Place and the location where a maple tree stood in very close proximity to the sunroom of the house on the defendant's property.[2] This front (westerly) section of the disputed area is lawn. The plaintiff and her parents, when they occupied the house now owned by the plaintiff, maintained that grassy area as if it were their own and in a way that satisfies the elements of a claim for adverse possession. In 1978, the plaintiff's father noticed a pin in the location where the southwest corner of 20 Ash Place is located, according to the record description of that property. He then set his own pin at the spot where he believed that his northwest corner was located. This second pin is approximately ten feet north of the pin that correctly reflects the record boundary. The court concludes that even though Mr. Carter was mistaken regarding the location of his northwest corner and therefore of the location of the northern boundary of his property, he did not intend to occupy the disputed property conditionally. His discovery of the more southerly pin (the one that correctly depicts the northwest corner of 22 Ash Place) constituted a message that he did not own north of a line that extended

---

[2] After the defendant purchased the property, its principal cut down the maple tree because it was in poor condition and threatened the house located on the defendant's lot -- and, presumably, the house on the plaintiff's own lot. The remainder of the maple tree has regenerated into something resembling a bush or shrub. Its location is therefore apparent.

from that location. In the face of this message, he manifested an intention to assert ownership beyond that point. "If . . . a party claiming through mistake has an absolute intent to claim the land, his possession is adverse to the true owner." *Emerson v. Maine Rural Missions Association, Inc.*, 560 A.2d 1, 3 (Me. 1989). As in *Emerson*, the plaintiff's predecessor in interest asserted title to the disputed property even knowing of circumstances that this assertion was challenged. *Id.* Therefore, the plaintiff at bar has proven "the requisite 'absolute intention' necessary to constitute adverse possession." *Id.*

However, the plaintiff has not acquired the remainder of the disputed section under principles of adverse possession. After the plaintiff's father acquired 22 Ash Place in 1978, he piled stumps, brush and other vegetative debris within the rear section of the disputed area, which is the easterly end. He did this to create a barrier that would make it difficult for people present on the land at 20 Ash Place from crossing over onto the boundary (as he believed it to be) onto his property The evidence does not reveal when he began that practice, and the plaintiff therefore has failed to establish at least the temporal element of an adverse possession claim for that portion of the disputed property.

Finally, the middle section of the disputed property is overgrown with bushes. At one point, the plaintiff's predecessor in interest maintained a rock garden in that area. However, that project was abandoned, and that area grew over. Neither the plaintiff nor any of her predecessors have possessed the third, middle section of the disputed property in a way that would support a claim of ownership by means of adverse possession to it.

Therefore, the court concludes that the plaintiff has established title by adverse possession to the section of the disputed property, which, as described above, is between the site of the felled maple tree and Ash Place.

The defendant contends that in the circumstances of this case, the plaintiff is barred by the equitable theory of laches from asserting an ownership claim to any part of its parcel.

> Laches is the omission to assert a right for an unreasonable and unexplained length of time. . . .It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right. . . .Whether the equitable doctrine of laches applies in a given circumstance is a question of law.

3

*Northeast Harbor Golf Club v. Harris*, 1999 ME 38, ¶ 19, 725 A.2d 1018, 1023-24 (citations omitted). Delay alone is an insufficient predicate for a claim to be barred by laches. *Longley v. Knapp*, 1998 ME 142, ¶ 10, 713 A.2d 939, 943.

Here, the record does not reveal that any delay by the plaintiff in raising an adverse possession claim has worked to the prejudice of the defendant sufficient to bar her claim on equitable grounds. The defendant purchased the Ash Place lot with the intention of developing it into the site of a multi-unit residential condominium. It acquired the property in May 2000. From the record evidence, the court infers that the defendant and the seller entered into a purchase and sale agreement a substantial period of time prior to the closing. In late 1999, the defendant sponsored several neighborhood meetings to allow its principal to explain the development plans and to entertain the neighbors' responses. The plaintiff's father, who then owned 22 Ash Place, was vocal in expressing his opposition. Subsequently, in February 2000, the defendant submitted an application for approval of the development project with the local planning board. As of the time the plaintiff commenced this action in May 2000, aspects of the development project had been raised at four planning board sessions. The first two and the fourth such sessions were board meetings, and the third was a public hearing. At the second meeting, the defendant's application materials were found to be incomplete. After the plaintiff filed this action, the proposed development has come up in five additional meetings. As of the date of the trial in this case, the board has not acted finally on the defendant's application, and it remains pending with the municipality.

The court concludes that even if the plaintiff delayed in raising any claims to ownership of the disputed property, the defendant has not been unfairly prejudiced by that delay in a way that would make it inequitable to allow the plaintiff to claim ownership in this proceeding. The plaintiff's claim that she owns part of the property that the defendant hopes to develop clearly has added a complication to those plans, because it could compromise the defendant's ability to satisfy a number of requirements in the applicable ordinances, such as coverage restrictions and setbacks. The question, however, is not whether the plaintiff's ownership claim would affect the defendant's development plans, but whether any unreasonable delay in the plaintiff's assertion of that

4

claim is unfairly prejudicial. There is no meaningful or persuasive evidence that demonstrates, as a matter of law, that this result has obtained.

From the record evidence, one could speculate that two possible effects were caused by a dilatory assertion of an ownership interest. First, it might be argued that if the defendant had known of the uncertain quality of title to the disputed area, it might not have consummated the transaction in May 2000. However, the terms of the purchase and sale agreement are not a matter of record in this case. Therefore, the court would be required to speculate in order to conclude that the terms of the contract contained a condition that would have relieved the defendant of any obligation to perform under the contract by purchasing the property. As far as this record reveals, the defendant was contractually committed to buy the property irrespective of the initiation of claims such as the plaintiff's during the contract's lifetime. Further, in the absence of any such conditions that would have excused performance by the defendant, it would have been subject to an action for specific performance.

The second possible effect of any delayed action by the plaintiff has been to prolong the municipal process involving the development application. If the plaintiff's contention had been aired earlier in the process, then the planning board would have been in a position to consider those ramifications. However, the plaintiff's claim still required resolution in the court system, and the board therefore could not have responded to the issue definitively. Further, the evidence demonstrates that the municipal process has been of considerable duration, and the delay of several months between the commencement of that process and the institution of the case at bar has not been shown to be of enough significance to bar the plaintiff's claim here.

For these reasons, even if the plaintiff unreasonably delayed the moment when she first publicly raised a question about ownership of the southerly strip of the property putatively owned by the defendant, that delay does not bar her right to pursue that claim here. The court need not and therefore does not address the questions of whether she engaged in such a delay and whether that delay was unreasonable and unexplained.

The entry shall be:

5

For the foregoing reasons, judgment is entered for the plaintiff. By adverse possession, the plaintiff owns a portion of the strip of real property described in plaintiff's exhibit 1 as the "contested area," between the easterly boundary of the parcel associated with 22 Ash Place in Bar Harbor, and the point near the sunroom of the house at 22 Ash Place where a 7 inch maple tree (as depicted in plaintiff's exhibit 1) is or was located.

The plaintiff is awarded her costs of court.

Dated: August 19, 2002

_____
Justice, Maine Superior Court

FILED &
ENTERED

AUG 2 1 2002

SUPERIOR COURT
HANCOCK COUNTY

6