STATE OF MAINE                    SUPERIOR COURT
HANCOCK, SS.                      CIVIL ACTION
                                 Docket No. RE-98-21


Robert C. Jordan et al.,
        Plaintiffs



        v.                              Decision and Judgment

DONALD L. G                 LAW LIBRARY

Janet Igoe,
        Defendant                       SEP 15 2003


        Hearing in this matter was held on April 7 and 8, 2003.  On both hearing dates,

the parties were present with counsel.  Following the trial, the parties filed written

argument, which the court has considered.  As it has evolved, this case consists of the

parties' dispute regarding a common boundary to land located in Ellsworth, Trenton and

Lamoine.[1]  The basis for this dispute is understandable, because the record descriptions in

the relevant instruments contain a measure of ambiguity.

        The location of a boundary on the face of the earth is a question of fact.  *Hennessy*

*v. Fairley*, 2002 ME 76, ¶ 21, 796 A.2d. 41, 48.  To determine that location from a deed

description, the court must determine the intent of the parties to that deed.  *Id.*  If the facts

extrinsic to the deed description are affected by a latent ambiguity, then a parcel's

boundaries are located by reference to monuments, courses, distances and quantity, in

that priority.  *Id.*  "Monuments" are "visible marks or indications left on natural or other

objects indicating the lines and boundaries of a survey.  In this sense the term includes

not only posts, pillars, stone markers, cairns, and the like, but also fixed natural objects,

blazed trees, and even a watercourse."  BLACK'S LAW DICTIONARY 1159 (rev. 4th ed.

---

[1] The complaint and counterclaim both include claims addressed to the issue of title, both
as a matter of record and, in the plaintiffs' case, by adverse possession.  The plaintiffs
included a trespass claim in their complaint but no longer pursue that theory.


1

1969). An adjoining tract is a monument if it is identified as a boundary in the deed. *Snyder v. Haagen*, 679 A.2d 510, 514 (Me. 1996).

The parties' parcels are located east of route 3 in Ellsworth, which runs between Ellsworth and Mount Desert Island. The road runs in a generally north-south direction. Ultimately, the plaintiffs argue here that their property is bounded on the westerly side by the eastern edge of route 3. The defendant, on the other hand, argues that she owns some of the land claimed here by the plaintiffs and that she owns land between route 3 and the westerly boundary of the plaintiffs' parcel. The Ellsworth-Trenton town line intersects route 3 diagonally at a point that forms either the southwest corner of the plaintiffs' parcel (as they contend) or the comparable corner of the defendant's (as she contends).

The deed of conveyance to the plaintiffs includes two descriptions. Both descriptions are limited to an identification of abutters, the town where the property is located (Trenton) and, as to one description, a reference to area (25 acres); there are no metes and bounds, and there are no courses. *See* exhibit 2I. The plaintiff's chain of title includes a deed executed in 1958, in which the grantors were the Inhabitants of the Town of Trenton. *See* exhibit 2G. The inclusion of two descriptions, which appears to have originated with the 1958 deed from the Town, is curious, because attached to the second description is the note, "It is the intention and purpose of this deed to convey all interest of the grantors in the premises above described, whether or not the descriptions refer to one and the same lot." *See* exhibit 2I. When the second description first appeared in a deed in the plaintiffs' chain of title, the deed recited, "Said premises [described in the first description] are also the premises. . .under the [second] description. . . ." *See* exhibit 2G. As noted in all of the deeds admitted into the record, the property associated with the first description is 25 acres and is bounded on the west by the land of Pierce.

The defendant's deed includes two descriptions, although here they clearly are of two distinct parcels. The larger of the two, which, according to a 1921 deed (the relevance of which is contested by the plaintiffs) is 115 acres, *see* exhibit 16, and constitutes the western boundary of the plaintiffs' property.[2] The current record

---

[2] On exhibits 10 and 11, the smaller of the defendant's two parcels is located adjacent to and northerly of the plaintiffs' parcel and, on those surveys, is the area bounded by points E, F, G and H.

2

description of the defendant's land starts and ends at the following point: "Beginning on the road leading from Ellsworth to Bar Harbor and on the easterly side of said road at a point where the Ellsworth-Trenton line crosses said road." *See* exhibit 3F. The deed of conveyance to the defendant describes the location of the property as Ellsworth and Trenton. *Id.*

Here, the plaintiffs contend that the northerly boundary of their property runs all the way to route 3, which then constitutes the westerly line of their land. From this, they further argue that this northerly boundary is the southerly boundary of the defendant's property. This contention, however, fails to adequately account for the clearest single point of reference in any of the deeds relevant to this case, namely, the point where route 3 intersects with the Ellsworth-Trenton town line. This point is a monument, and under controlling Maine law, it (and any other monuments) gets the greatest weight in revealing the location of the parties' property lines on the face of the earth. Some evidence presented during the trial suggested that the Ellsworth-Trenton town line has not been fixed over the course of time and in fact has moved. However, the corner point urged here by the plaintiffs is well over 800 feet north of the point as described in the defendant's deed. The record evidence is insufficient to support a finding that the town line has ebbed and flowed to this magnitude.

For this reason, the court also places weight on the record references to the towns in which the parties' properties are located. Throughout the conveyances involving the plaintiffs' property, it was described as a parcel of land situated in Trenton. In some circumstances, this type of reference may not be determinative. For example, as the plaintiff has pointed out, some of the defendant's land is located in Lamoine, although her deeds, and the deeds in her chain of title that contain record references,[3] note only that the land is located in Ellsworth and Trenton. However, the reference to the municipal situs in the plaintiffs' deeds attains greater significance because in 1958, the parcel they now own was conveyed to a predecessor in interest by the Inhabitants of the Town of Trenton. *See* exhibit 2G. There is no evidence that the town owned land in Ellsworth,

---

[3] Several deeds from the 1920's and 1930's conveyed all of the grantor's interests in any property she owned and failed to describe the nature or location of those parcels. *See* exhibits 3A, 3B and 3C.

3

and there is no evidence that that parcel was augmented with land located in Ellsworth. Thus, the land that was subject to the 1958 transfer is land within Trenton. This is strong evidence that, despite their argument to the contrary, the plaintiffs are not the record owners of the triangular shaped piece of land that falls between route 3 and the town line.

In support of their argument that the northern boundary of their property extends as far westward as route 3, the plaintiffs (through their surveyor[4]) rely on language in the defendant's deed that the final call runs "in a general westerly direction along line of land of Hoit [the plaintiffs' predecessor] and *continuing on said course* to the point of beginning." *See* exhibit 3F (emphasis added). This language is also found in deeds predating the defendant's. The plaintiffs argue that because the line continues on that westerly course to the beginning point, that line continues directly over to route 3 and intersects that road well north of the corner point promoted by the defendant. However, monuments are given greater weight than courses. *Hennessy*, 2002 ME 76, ¶ 21, 796 at 48. Thus, the intersection of route 2 and the town line is more probative of the location of the defendant's property and thus of the plaintiffs'.

The plaintiffs also argue that a deed in the defendant's chain of title provides that the line running from the intersection of the road and the town line, to the near corner of the plaintiffs' present lot is 74 rods (1221 feet). In fact, in the view of the defendant's surveyor, that distance on the face of the earth ends up as 887 feet (roughly 54 rods). On this basis, the plaintiffs argue that the line between the road and their property should be shifted northward, because, due to the angle between the road and the town line, that distance increases in that direction. This would have the effect of extending the plaintiffs' property so that it abuts route 3. However, monuments also have priority over distances. *Hennessy*, 2002 ME 76, ¶ 21, 796 at 48. Thus, with an inconsistency or

_____

[4] It is significant to note that the plaintiffs' surveyor depicted the northerly line of his clients' property so as to extend over to route 3. In doing so, however, he noted on the final version of the survey that this line simply represented the claim that the plaintiffs have made in this proceeding. *See* exhibit 9. Particularly when combined with the surveyor's trial testimony, the court takes this comment to embody equivocation on the merits of that position.

It is also noteworthy that the plaintiffs previously had hired a different surveyor but did not like the results he reached regarding the location of their boundaries. They then retained the surveyor who testified at trial, although, as noted, his level of commitment to the plaintiff's position appears to be soft.

4

incompatibility between the monument noted in the defendant's current deed and the distance call noted in the 1921 Rogers-to-Hagerthy deed, the latter yields to the former.

For these reasons, the court finds that the defendant is the record owner of the triangular section of the disputed property (the area marked by a broken line on exhibit 1), namely, the portion bounded by route 3 on the west, by the Ellsworth-Trenton town line on the east, and by an extension of the plaintiffs' northerly line on the north.

As an alternative theory, the plaintiffs argue that they have acquired this portion of the land by adverse possession. "To successfully acquire title by adverse possession, the adverse possessor must prove by a preponderance of the evidence possession for a 20-year period that is actual, open, visible, notorious, hostile, under a claim of right, continuous and exclusive." *Loavenbruck v. Rohrback*, 2002 ME 73, ¶ 11, 795 A.2d 90, 93. The claimant must establish these elements by a "fair preponderance of the evidence," which means simply a preponderance of that evidence. *Striefel v. Charles-Keyt-Leaman Partnership*, 1999 ME 111, ¶ 3, 733 A.2d 984, 988. Here, the plaintiffs' proof falls well short of proof. The use of the land underlying the adverse possession claim is related to forestry activities: harvesting trees, cutting Christmas trees and tipping. The generalized cutting, however, did not extend into the area west of the town line. Further, the court does not regard the occasional practice of tipping and cutting some Christmas trees to be qualitatively adequate to provide "adequate notice that a trespass is occurring, and that the owner's property rights are in jeopardy." *Id.*, ¶ 11, 733 A.2d at 990-91.

There is a second area of disputed ownership. This land is depicted in the hatched area of the survey admitted as exhibit 11, prepared by the defendant's surveyor. This issue cannot be resolved by reference to the factor that was central to an examination of the more westerly section of the disputed property, namely, the intersection of route 3 and the town line. Instead, the court finds that the best evidence of record ownership is found in an old deed description in the defendant's chain of title, which includes metes and bounds data. *See* exhibit 16. The plaintiff argues that this 1921 deed description is not relevant, because although some of the land described in that instrument is now owned by the defendant, subsequent deeds based on the 1921 deed did not include a "meaning and intending" clause that would incorporate by reference all of the property conveyed in

5

1921. This is certainly a reason to be wary. However, it is even more speculative to assume that there were other outconveyances, apparently unrecorded, from the property conveyed in 1921 that would exclude parts of it from the defendant's ownership. Further, the plaintiff's arguments regarding the quality of this evidence is tempered by the fact that, when the record is viewed as a whole, the evidence of record ownership is itself not of a high level. Thus, despite the plaintiff's legitimate observations, the court does place reliance on the 1921 property description to assist in determining the parties' present boundary locations.

In relevant part, the 1921 deed provides that the land in the defendant's chain of title runs from the road to the plaintiff's present property in a generally east-west direction, and then runs to the north. These course calls lose priority only to monuments. Because there are not meaningful monuments to assist this part of the analysis,[5] those courses are important. If the boundary between the parties' property runs as shown on the western edge of the hatched area on exhibit 11, then the courses would not be honored. Further, if the hatched area is regarded as part of the defendant's parcel, then the area of land owned by the plaintiffs and the defendant matches the sizes noted in their deeds: the plaintiff's parcel is 25 acres, and the defendant's larger parcel is 115 acres. Quantity of land is the lowest of the four priorities of construction, but it is entitled to some weight, and because it happens to coincide with the results of the course calls, it has added significance here.

The court recognizes that the evidence -- particularly on the record ownership of this portion of the disputed area -- is difficult. Indeed, even the defendant's surveyor noted a lack of clarity on this issue, prudently noting the question left open by the treatment of the 1921 deed in subsequent conveyances. Nonetheless, the parties have called on the court to establish their boundary, and the court must do so based on its best assessment of the most probative evidence. From the available evidence, the court's best

---

[5] The defendant argues that the land of Pierce is monument and serves to establish the location of the plaintiffs' westerly boundary. The court agrees that property owned by another is a monument. However, as the court understands the evidence, the record does not adequately reveal how the location of Pierce's land (at least part of which is now the defendant's land) can be located, in the absence of circular reasoning (the plaintiffs' land begins where Pierce's land ends, because Pierce's land begins where the plaintiffs' land ends).

judgment is that the defendant is the record owner of the land that is represented by the hatched area on exhibit 11. This means that the lines are as shown on exhibit 10.

Finally, the plaintiffs contend that notwithstanding any conclusions of record ownership, they own the area show by the hatch marks under notions of adverse possession. The court concludes that they are partially correct. For the reasons noted above, in the circumstances of this case, the tipping of trees for boughs and cutting of Christmas trees is not sufficient use to wrest ownership from the titleholder. Further, the evidence is insufficient for the court to conclude that the plaintiffs harvested trees on a significant scale from the portion of the land at issue. The plaintiffs purchased the land to harvest trees. However, they concentrated their work in the eastern end of the parcel. Jordan testified that they did not even cut as far westerly as the town line. Thus, the cutting ended east of that point. Further, the section of the land shown by the hatch marks includes ground that is wet and not suitable for harvesting. Exhibit 1 suggests that a fair portion of this area consists of wet land. From this, the court cannot find that the plaintiffs have used this section to an extent necessary to establish ownership by adverse possession.

However, more than 20 years prior to the time the plaintiffs commenced this action, the plaintiffs created or improved a road that provided access to their lot from route 3. In order to make it useable, they used a dozer and had gravel hauled in. That road enters intersects route 3 very close to the Ellsworth-Trenton town line (which is the monument demarking the corner of the defendant's land). It runs roughly parallel to and is proximate to the southern boundary of the defendant's property, and then crosses onto the plaintiffs' own parcel. The defendant and members of her family were regularly present on their land for holidays and other family events. The defendant's father, at least, observed the road and noted that it was used to haul wood. This use of the road satisfies the elements of a claim for adverse possession. However, the plaintiffs have acquired title only to the land under the road and not to the surrounding property.

The entry shall be:

For the foregoing reasons, judgment on the complaint is entered for the defendant. On the counterclaim, judgment is entered for the counterclaim plaintiff (the defendant). The court finds and concludes that the real property of counterclaim plaintiff Janet Igoe

7

as described in the deed recorded at book 1676 page 210 of the Hancock County Registry of Deeds, and the real property of counterclaim defendants Donald L. Seavey and Robert C. Jordan as described in the deed recorded at book 857 page 169 of the Hancock County Registry of Deeds are as shown in exhibit 10, which is a standard boundary survey prepared by S.E.Downey, Inc. in July 1996 and which is incorporated by reference herein, except, however, that the plaintiffs shall be deemed as owners to title of the land under the road used for logging purposes and which crosses the extreme southern portion of the land of Janet Igoe as referenced above and which connects route 3 and the plaintiffs' real property as referenced above.

The counterclaim plaintiff (the defendant) is awarded her costs of court.

Dated: September 1, 2003

Justice, Maine Superior Court

FILED &
ENTERED

SEP 0 3 2003

SUPERIOR COURT
HANCOCK COUNTY

8